**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

DRAPER FRANK WOODYARD,       )
                            )
     Plaintiff,               )
                            )
vs.                         )     CIV. A. NO. 25-220-KD-MU
                            )
FOLEY POLICE DEP'T, *et al.*,     )
                            )
     Defendants.           )

## REPORT AND RECOMMENDATION

Plaintiff Draper Frank Woodyard ("Plaintiff" or "Woodyard"), at the direction of the Court (*see* Doc. 13) and without the assistance of an attorney, has filed an amended complaint under 42 U.S.C. § 1983 against Investigator Purdue, Investigator Kramer, Foley Police Chief and/or Commissioner, two unknown patrolmen, and two unknown correctional officers. (Doc 16). This action has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(b). Following a review of Plaintiff's amended and operative complaint (Doc. 16), the undersigned **RECOMMENDS** Woodyard's complaint be **DISMISSED without prejudice** before service pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## I. Summary of the Complaint

Woodyard alleges that on April 6, 2025, he was "jumped by an unknown cop, handled roughly, shoved into a police car without cause" and taken to the City of Foley Jail, where he was detained for two days (without being arrested) before being transported to the Baldwin County Corrections Center. (Doc. 16 at 4) (cleaned up). He

explains that while he was on the streets of Foley, Alabama, a police officer jumped out of his patrol car and pointed a pistol and taser at him and stated, "Don't you move Frankie. I don't want to do it." (*Id*. at 5). Woodyard claims he was held at gunpoint for nearly 10 minutes before a second police officer arrived at the scene and told Woodyard that he was being detained for a stabbing connected to a domestic violence incident. Woodyard claims the second patrolman threatened him with false charges before he was "placed forcefully into patrol car causing injury to [his] head where it hit the door frame." (*Id*.). Upon arriving at the City of Foley Jail, Woodyard claims he was handled "roughly" by guards, explaining he "was handcuffed being held by a bar and officer," while another guard pulled at his legs "as if trying to separate [his] lower body from [his] torso," and then he was "thrown bodily into a cell and refused a shower, phone call, bond, or information regarding his detainment." (*Id*. at 4). Woodyard claims he "hurt[] badly" from the rough treatment and had bruising on his wrists but was denied medical treatment. (*Id*. at 4).

On April 7, 2025, Woodyard was interrogated by Investigator Purdue and Investigator Kramer. Afterwards, when being returned to his cell, Woodyard claims he "was bodily handled" by Perdue, while Kramer watched. (*Id*.). Specifically, he claims that while restrained in handcuffs and shackles, he was "run into a door frame causing further injuries to his wrist, side, chest, and lower face." (*Id*.). Woodyard states he was "refused medical treatment for injuries sustained to wrists and various places on [his] body." (*Id*. at 6).

2

On April 8, 2025, he claims he was, again, "jumped and handled bodily" by two unknown officers, two patrol cops, one unknown guard, and one transport officer and was denied medical treatment for "worsening injuries." (*Id*. at 4).

Woodyard is suing Investigators Purdue and Kramer, two unknown Foley Policemen, and two unknown Foley correctional officers for excessive force and/or failure to protect and denial of medical care. He is suing the Foley Chief of Police and/or Foley Commissioner for failure to train officers and failure to protect him based on "employment of unsafe and dangerous standing customs or policy" at the Foley Police Department and Jail. (*Id*. at 8). Woodyard further sues for "terrorists threats," false arrest, malicious prosecution, and unlawful detainment. (*Id*.). Woodyard seeks compensatory and punitive damages from each defendant, as well as costs associated with this litigation. (*Id*. at 9).

## II. <u>Standard of Review</u>

Woodyard's complaint is subject to screening both because he is a prisoner seeking relief from a governmental entity or officer, *see* 28 U.S.C. § 1915A, and because he is proceeding without prepayment of fees (*in forma pauperis*), *see id*. at § 1915(e)(2)(B). Section 1915(e)(2)(B) requires a district court to dismiss an *in forma pauperis* prisoner action if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Id.* at § 1915(e)(2)(B)(i)-(iii). Similarly, under § 1915A, a court must review a prisoner's complaint against a governmental entity or officer to identify cognizable claims and must dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted,

3

or seeks monetary relief from a defendant who is immune from such relief. *Id.* at §
1915A(b)(1)-(2). Dismissal for these reasons is mandatory rather than discretionary. A
claim is frivolous "when it appears the plaintiff 'has little or no chance of success.'"
*Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted). A
court may conclude a claim has little or no chance of success when the claim is "based
on an indisputably meritless legal theory," when its "factual contentions are clearly
baseless," or when the defendant is immune from suit. *Neitzke v. Williams*, 490 U.S.
319, 327 (1989).

A complaint may be dismissed for failure to state a claim upon which relief may
be granted when it fails to "contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a
complaint must have sufficient factual allegations "to raise a right to relief above the
speculative level," and the allegations must "show[] that the pleader is entitled to relief."
*Twombly*, 550 U.S. at 555, 557. "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at
678.

In reviewing Woodyard's complaint, the Court liberally construes his allegations,
holding them to a more lenient standard than those drafted by an attorney. *See
Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).
However, this leniency does not give the Court license "to rewrite an otherwise deficient
pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165,
1168–69 (11th Cir. 2014) (quotation omitted). Furthermore, the Court "accepts the

4

complaint's factual allegations as true," *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021), but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 556 U.S. at 681. As a *pro se* litigant, Woodyard is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

### III. Discussion

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts showing that a person acting under color of state law violated a specific federal constitutional right or federal statutory provision. *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010); *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States."). In a § 1983 action, the plaintiff must also to establish a causal connection between a defendant's acts or omissions and the alleged violation of the plaintiff's rights. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam). That is, the plaintiff must show that the named defendant was the proximate cause of his injuries, *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2006), and that the injury "would not have occurred but for [the defendant's] conduct and if there were no unforeseeable intervening acts superseding [the defendant's] liability." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (citation omitted).

## A. <u>Claims of Excessive Force</u>

Taking as true Woodyard's complaint allegations, it cannot be said that any force used against Woodyard rose to an excessive level under the constitution. Pursuant to the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), to state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." *Id*. Whether conduct is considered objectively reasonable turns on the "facts and circumstances of each particular case." *Id*. at 397 (citing *Graham*, 490 U.S. at 396). *Kingsley* provides six non-exclusive factors for determining whether force is considered reasonable (or not), including: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) efforts made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting. *Id*. at 397. Inherent in the protection afforded by the constitution is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *id.* (quoting *Johnson v. Glick*, 481 F.2d at 1033), as the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

6

'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see, e.g., McCall v. Crosthwait*, 336 F. App'x 871, 873 (11th Cir. 2009) (per curiam) (affirming district court's finding that the amount of force used and the extent of plaintiff's injury were *de minimis* where officer pushed plaintiff out of jail's elevator, causing him to hit steel cell door, receive a bruise on his right elbow and shoulder, and complain of pain in his shoulder and forearm).

Here, Woodyard has alleged no facts that might plausibly suggest that the defendants' "rough handling," "forceful" placement into the patrol car and jail cell, "pulling," "shoving," or even running or pushing him into a door frame was anything but *de minimus* force, nor do any facts suggest that the force was objectively unreasonable. Instead, Woodyard's allegations are conclusory and indicate harm incidental to reasonable force used under the circumstances of seizing Woodyard and detaining him. For instance, Woodyard was apprehended for questioning related to a stabbing. The violent nature of such a crime supports that a single officer initiating the stop and seizure would be armed; therefore, it is reasonable that Woodyard was held at gunpoint until a second patrol officer arrived at the scene to assist. Alleged threats made against Woodyard fail to rise to a constitutional level. *Scott v. Cook*, 2005 WL 5976136, *4 (N.D. Fla. Nov. 15, 2005) (It "is well settled law that a claim for verbal abuse or threats is not cognizable under section 1983."); *see, e.g., Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse not cognizable under 1983). Moreover, no allegations suggests that Woodyard's head was purposefully slammed into the patrol car; rather the facts support Woodyard inadvertently hit his head as he was put in the patrol car. Similarly, the allegations of being "thrown" into a cell or "run" into a door frame are vague and lack

7

support that any "rough handling" or "bodily handling" of Woodyard was unreasonable and are simply insufficient to state a claim under the Fourteenth Amendment. While a Plaintiff is not required to prove his case at the pleading stage, he must do more than assert unadorned, "defendant-unlawfully-harmed-me" conclusions, which is all he has done here. Plaintiff has not stated an excessive force claim under the Fourteenth Amendment.

**B. Claims of Deliberate Indifference to Medical Need**

To the extent Woodyard claims the defendants denied or refused him medical care, he has failed to state a constitutional claim. First, the complaint allegations fail to support the Woodyard suffered an objectively serious medical need, which is essential to stating a denial of medical care claim under § 1983. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted). Woodyard's complaint allegations that he "hurt badly," had bruises on his wrists, and sustained injuries on "various places on his body," fail to demonstrate an objectively serious medical need. Second, Woodyard fails to allege facts that demonstrate any defendant acted with deliberate indifference to a serious medical need. To establish deliberate indifference, "the plaintiff must demonstrate that the defendant acted with 'subjective

8

recklessness as used in the criminal law,' and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to the risk.'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)) (internal citations omitted). The complaint is simply void of facts showing that Woodyard sought treatment for injuries, that his injuries were obvious to a lay person, or that his injuries worsened in any way because he was denied medical care. Consequently, Woodyard has failed to state a claim of deliberate indifference to medical care.

## C. False Arrest, False Imprisonment, Malicious Prosecution

Woodyard broadly asserts he "was kidnapped off the streets" and "detained by Foley Police Not Arrested – [] was held 2 days without explanation" and is currently being held at Baldwin County Corrections Center without ever having been arrested. (Doc. 16 at 4, 5, 8). At the same time, however, Woodyard describes in his complaint that the officers who seized him told him he was being detained for a "stabbing" and "domestic violence incident," (*id*. at 4, 5), suggesting the existence of probable cause for his seizure. *Cf. United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir.1992) (Probable cause is present "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed . . . a crime.") (citation omitted). The "existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." *Case v. Eslinger,* 555 F.3d 1317, 1326–27 (11th Cir.2009) (quotations and

9

citation omitted); *see also Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010) (holding that a false arrest claim fails when the officer has probable cause to make the arrest). As to his unlawful detention claim, Woodyard must show he is being held without legal process, *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[T]he tort of false imprisonment is detention *without legal process*.") (emphasis in original), which he does not do. Notably, a search of state court records reveals that on April 7, 2025, an affidavit was sworn to before a magistrate judge and warrant issued for Woodyard's arrest for violations of Ala. Code §§ 13A-6-21(1), assault 2nd degree, and 13A-6-132, domestic violence 3rd degree, having occurred on April 6, 2025.[1] *See State of Alabama v. Woodyard*, DC-2025-000398 and DC-2025-000398.01. The cases were bound over to the grand jury and Woodyard was indicted in August 2025 for violations of §§ 13A-6-21(a)(3) and 13A-6-132. *See State of Alabama v. Woodyard*, CC-2025-001189. Because Woodyard is being held pursuant to legal process, his false arrest claim is more appropriately defined as a malicious prosecution claim.

To the extent Woodyard asserts allegations of malicious prosecution, the Court lacks jurisdiction over his claim because the claim is not ripe. To establish a malicious prosecution claim under § 1983, a plaintiff "must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). Here, as just discussed, Woodyard's state criminal

---

[1] This court may take judicial notice of state court proceedings. *Grider v. Cook*, 522 F. App'x 544, 545 n.2 (11th Cir. 2013); *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1041 n. 18 (11th Cir. 2014) (judicial notice taken of an online judicial system similar to Alacourt.com) (citing Fed. R. Evid. 201).

proceedings are ongoing. Accordingly, Woodyard's claim for malicious prosecution, under § 1983, will not accrue until the criminal proceedings in *State of Alabama v. Woodyard*, CC-2025-001189 (Baldwin County, Alabama) have been resolved in his favor. Consequently, this claim is due to be dismissed without prejudice because the claim is premature and not yet ripe for review. *Cf. Heck v. Humphrey*, 512 U.S. 477, 489 (1994) (The Supreme Court held that a claim for money damages for an "allegedly unconstitutional conviction or imprisonment . . . [requires] a § 1983 plaintiff [to] prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.")

Accordingly, Woodyard's false arrest, false imprisonment, and malicious prosecution claims are due to be dismissed under 28 U.S. C. § 1915(e)(2)(B)(i) and (ii).

## D. Claims of Failure to Train and Prevent Harm

Woodyard alleges that the Foley Police Chief and/or Foley Police Commissioner are liable for failing to train and failing to protect or prevent harm based on employment of unsafe and dangerous standing customs or policies. (Doc. 16 at 8). The supervisory claims however are also vague and conclusory; therefore, they fail to state a claim upon which relief may be granted.

"[T]he standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris County, Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quotation omitted). There is no "vicarious liability, including respondeat superior, in § 1983 actions." *Goebert v. Lee*

11

*County*, 510 F.3d 1312, 1331 (11th Cir. 2007). Thus, a defendant "may not be sued under Section 1983 for the acts of others but, rather, only for its own acts." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1056 (S.D. Ala. 2007), *aff'd*, 261 F. App'x 182 (11th Cir. 2008). Accordingly, a plaintiff asserting a claim under 42 U.S.C. § 1983 must show a causal connection between each defendant's actions, orders, customs, or policies and the alleged violation of the plaintiff's rights. *Zatler*, 802 F.2d at 401. A casual connection may be established by alleging sufficient facts that show:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton County, Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quotation omitted).

Because Woodyard fails to make a direct allegation against the named supervisory defendants, to state a claim a claim against the Foley Police Chief and/or Commissioner, he must show that an official policy or custom put in place by the defendant was the "moving force" behind his alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978). A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* (quotation omitted); *see also Craig v. Floyd County, Ga.,* 643 F.3d 1306, 1311 (11th Cir. 2011) (stating that proof of a single incident of unconstitutional activity is insufficient to show a policy or custom under § 1983 even when the incident involved several employees of the defendant). Woodyard has failed to put forth any

12

allegations to show a persistent, widespread practice demonstrating that the Foley Police Department or Foley correctional officers had a policy or custom, put in place by the Chief of Police or Commissioner, to deny medical care, use excessive force, falsely imprison, maliciously prosecute, unlawfully detain, or violate the constitutional rights of inmates. *McDowell*, 392 F.3d at 1290. Instead, Woodyard makes vague, conclusory allegations supported solely by his personal experience on or around April 6-8, 2025. Woodyard's allegation of the single incident is insufficient to establish a liability against the Foley Chief of Police or Commissioner under § 1983. *See Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[R]andom acts or isolated incidents are insufficient to establish a custom or policy.").

Moreover, there can be no supervisory liability when there is no underlying constitutional violation. *Stalley v. Cumbie,* 124 F.4th 1273, 1288 (11th Cir. 2024) ("[U]nder our precedent, plaintiffs cannot maintain a supervisory liability claim tied to an alleged underlying constitutional violation if it is determined that no such violation occurred). Here, the facts alleged by Woodyard are not sufficient to state a constitutional violation. Consequently, he cannot plausibly state a supervisory claim against the Foley Police Chief or Commissioner.

## IV. Conclusion

For the reasons discussed, Woodyard has failed to state a claim upon which relief may be granted. Because Woodyard has already been provided the opportunity to file an amended complaint (with guiding instructions from the Court), leave to amend would be futile. *Cf. Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (recognizing leave to amend may be denied if an amendment would be futile).

13

Therefore, it is **RECOMMENDED** that this complaint be **DISMISSED without prejudice** prior to service on the defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **25th** day of **March 2026**.

/s/ P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

14